QUINN EMANUEL URQUHART &
SULLIVAN, LLP
David M. Grable (SBN 237765)
davegrable@quinnemanuel.com
Lauren Lindsay (SBN 280516)
laurenlindsay@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Eric Huang (*pro hac vice*)
erichuang@quinnemanuel.com
295 5th Avenue
New York, NY 10016-7103
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorneys for Plaintiff Harbor Freight
Tools USA, Inc.*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| HARBOR FREIGHT TOOLS USA, INC., <br><br> Plaintiff, <br><br> vs. <br><br> CHAMPION POWER EQUIPMENT, INC., <br><br> Defendant. | Case No. 2:24-cv-08722-SVW-AS <br><br> **JOINT STIPULATION REGARDING DISCOVERY DISPUTE OVER SCOPE OF PROTECTIVE ORDER** <br><br> Hon.  Stephen V.  Wilson <br> Hon.  Alka Sagar <br><br> Hearing Date: August 12, 2025 <br> Hearing Time: 10:00 a.m. <br> Discovery Cutoff: TBD <br> Pretrial Conference Date: TBD <br> Trial Date: TBD <br> Markman Hearing: Sep. 30, 2025 |

# **TABLE OF CONTENTS**

<u>**Page**</u>

PLAINTIFF HARBOR FREIGHT'S POSITION REGARDING SCOPE OF
      PROTECTIVE ORDER...................................................................1

I.     INTRODUCTION ......................................................................1

II.    ARGUMENT.............................................................................3

    A.    The proposed prosecution bar reasonably reflects the risk of
        disclosure.........................................................................5

    B.    Champion cannot show that either Mr. Ziolkowski or Mr. Fritz is
        entitled to an exemption from the prosecution bar...............................14

III.   CONCLUSION .........................................................................17

DEFENDANT CHAMPION POWER EQUIPMENT, INC.'S OPPOSITION
      TO PLAINTIFF'S PROPOSED PATENT PROSECUTION BAR ..............17

I.     INTRODUCTION ......................................................................17

II.    LEGAL STANDARD...................................................................19

III.   HARBOR FREIGHT FAILS TO SHOW GOOD CAUSE FOR A
      PROSECUTION BAR................................................................22

    A.    The Facts of this Case do not present a risk of inadvertent
        disclosure and ZPS attorneys are not competitive decisionmakers.
        ....................................................................................22

    B.    The balance of potential harm to the opposing party from
        restrictions imposed on that party's right to have the benefit of
        counsel of its choice disfavors the prosecution bar............................23

        1.    Disruption of Ongoing and Future Prosecution and
            Litigation .................................................................25

        2.    Imbalance of Harm .....................................................26

    C.    Scope of activities prohibited by the bar, the duration of the bar,
        and the subject matter covered by the bar reasonably reflect the
        risk presented by the disclosure of proprietary competitive
        information. ...................................................................28

    D.    If a bar is instituted, the members of the ZPS firm should be
        exempt. .........................................................................31

IV.   PRECEDENT DOES NOT SUPPORT A BAR ON THESE FACTS...........33

V.    CONCLUSION .........................................................................33

Pursuant to L.R. 37-2, Plaintiff Harbor Freight Tools USA, Inc. ("Harbor Freight") and Defendant Champion Power Equipment, Inc. ("Champion") hereby present a joint stipulation to enter a protective order to apply in this case. The parties have one unresolved dispute over a ***patent prosecution bar*** proposed by Harbor Freight in the proposed protective order.[1]  Champion opposes inclusion of a patent prosecution bar.

To prepare for trial, the parties plan to produce confidential information that would disclose (a) information that a party is obligated to treat as confidential pursuant to an agreement with a non-party; (b) trade secrets of a party; or (c) confidential research, development, or commercial information of a party. The parties believe that disclosure beyond the limits set forth in the agreed portions of the protective order may injure the disclosing party or provide a competitive advantage to the receiving party or to others.

The parties met and conferred and, other than the disputed bar, agree that good cause exists to enter a protective order in this case. The parties have agreed upon all other terms of the proposed protective order. The parties have reached an impasse with respect to including the prosecution bar and respectfully seek the Court's assistance in resolving that issue.

## PLAINTIFF HARBOR FREIGHT'S POSITION REGARDING SCOPE OF PROTECTIVE ORDER

## I.    INTRODUCTION

Harbor Freight is a leading tool company that brought this action to seek a declaratory judgment that its sale of multi-fuel generators does not infringe thirteen patents belonging to its competitor, Champion.

---

[1]   A redline of the proposed protective order, reflecting the provision in dispute (and related edits), is attached as Exhibit A to the Declaration of Eric Huang ("Huang Decl."), filed herewith.

To protect its highly confidential intellectual property from improper exploitation by Champion, Harbor Freight proposes a patent prosecution bar in Sections 2.5 and 7.2 of the proposed protective order, as reflected by the redlines in Exhibit A to the Huang Decl. This procedural safeguard is common in patent infringement cases and prevents misuse of a party's confidential technical information. This provision bars the opposing party's attorneys who review the confidential information during the litigation from prosecuting patents in the same subject matter for a limited period after the litigation concludes. Prosecution bars exist because "[i]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010) (citation omitted).

Champion has served broad discovery seeking Harbor Freight's proprietary competitive technical information. Based on discovery served to date and the allegations in the counterclaims, it is likely that discovery will include information about Harbor Freight's future products and features in development, which have not yet been released on the market. A bar is appropriate here where Champion, a direct competitor, is represented by lawyers who are attorneys of record in pending Champion patent applications in the same field (*i.e.* multi-fuel generator technology). Despite the clear need for a bar in this case based on the attorneys of record, Champion has refused to agree to any prosecution bar of any scope.

A prosecution bar is necessary to mitigate the risk that Champion's attorneys might—inadvertently or otherwise—use Harbor Freight's proprietary competitive information disclosed in this litigation to Champion's advantage in patent prosecution.

The two Champion attorneys to whom Harbor Freight seeks to apply the prosecution bar—Tim Ziolkowski and Jacob Fritz—are plainly "competitive decisionmakers" who are "substantially engaged with [patent] prosecution" for

Champion under the relevant Federal Circuit test. *Id.* at 1380. They have a long history prosecuting patents for Champion, Champion has given them power of attorney over the patents at issue here, and they were already found to be competitive decisionmakers for Champion in a similar case in which Champion asserts infringement of the same patents.

The proposed bar is a reasonable compromise to address the risks at issue because it is limited in both duration and effect. It applies only to technical information about *future* products or product features, exempts prosecution activities that are administrative in nature, and lasts for only two years following conclusion of this litigation. Moreover, Champion will not suffer any prejudice, given that Champion is already represented in this lawsuit by lawyers at a different firm who could review the limited information at issue for purposes of the litigation while Mr. Ziolkowski and Mr. Fritz retain their ability to prosecute patents for Champion.

Harbor Freight respectfully requests that the Court issue a protective order that includes the patent prosecution bar, as reflected in the redlines in Exhibit A to the Huang Decl. A clean version of the proposed protective order, including the proposed prosecution bar, is attached as Exhibit B to the Huang Decl.

## II.    ARGUMENT

"Discovery in patent litigation frequently requires parties to provide valuable confidential information to opposing counsel." *Front Row Techs., LLC v. NBA Media Ventures, LLC*, 125 F. Supp. 3d 1260, 1275 (D.N.M. 2015). "Courts typically shield such information with protective orders that specify that the recipients can use it only for the litigation's purposes." *Id.* "Such provisions are generally accepted as an effective way of protecting sensitive information while granting trial counsel limited access to it for purposes of the litigation." *Deutsche Bank*, 605 F.3d at 1378. Here, the parties agree that such a protective order should issue, but courts have recognized that there are circumstances in which that protection is insufficient.

JOINT STIPULATION REGARDING DISCOVERY DISPUTE OVER SCOPE OF PROTECTIVE ORDER

A "problem often arises when trial counsel in one patent case also represent their client in patent prosecution actions," as Mr. Ziolkowski and Mr. Fritz do here (as shown below). *Front Row Techs.*, 125 F. Supp. 3d at 1275. "When trial counsel receive confidential technical information from opposing counsel, it may be difficult for them to avoid using the information in separate patent applications." *Id.* "Because even competitors acting in good faith cannot simply purge selected information from their memory, the risk is that they may later use the knowledge gained from the confidential material, however inadvertently, in the prosecution of future patents." *Id.* (citation omitted). Thus, "even the most rigorous efforts of the recipient of such information to preserve confidentiality in compliance with the provisions of such a protective order may not prevent inadvertent compromise." *Deutsche Bank*, 605 F.3d at 1378.

"Patent prosecution bars protect against this risk by prohibiting the recipients of a party's confidential technical information from engaging in patent prosecution-related activities concerning the subject matter of the patents in question." *Front Row Techs.*, 125 F. Supp. 3d at 1275. In the seminal Federal Circuit case addressing patent prosecution bars, the Court held that "a party seeking imposition of a patent prosecution bar must show that the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information." *Deutsche Bank*, 605 F.3d at 1381.[2] Once the party seeking the prosecution bar has made this showing, "the party seeking an exemption from a patent prosecution bar must show on a counsel-by-counsel basis: (1) that counsel's representation of the client in matters before the PTO does not and

---

[2]    "[T]he determination of whether a protective order should include a patent prosecution bar is a matter governed by Federal Circuit law." *Deutsche Bank*, 605 F.3d at 1378.

is not likely to implicate competitive decisionmaking related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of confidential information learned in litigation, and (2) that the potential injury to the moving party from restrictions imposed on its choice of litigation and prosecution counsel outweighs the potential injury to the opposing party caused by such inadvertent use." *Id.*

A.    **The proposed prosecution bar reasonably reflects the risk of disclosure**

The prosecution bar proposed here—a two-year bar that applies only to information about future products and product features—is reasonable in light of the high risk presented by disclosure of Harbor Freight's highly confidential technical information to Champion's competitive decisionmakers.

***Risk of Disclosure***.  Discovery requests that Champion has already served call for highly confidential documents about Harbor Freight's development of future products and product features, including new features for the generators at issue in this litigation.  For instance, Champion's requests for production ("RFP") include:

- RFP 4: Documents referencing any changes or modifications made to the Accused Products;

- RFP 9: All Documents reflecting Your efforts, if any, to develop or modify the Accused Products to design around one or more of the Champion Patents.

- RFP 24: Documents sufficient to show all changes in the design, function, construction, or operation of each of the Accused Products, either before or after March 27, 2024.

Huang Decl., Exs. D, E.

As explained in the concurrently filed Declaration of Mina Atta ("Atta Decl."), Harbor Freight's Senior Lead Engineer, Product Development, Harbor Freight is actively engaged in ongoing development and improvement of its generator technology, including research and development efforts, and has invested significant

resources in its next-generation product development. Atta Decl. ¶ 3. Harbor
Freight's technical information represents significant competitive intelligence
because it reveals proprietary approaches to solving common technical challenges in
generator design and manufacturing. *Id.* ¶ 5. Harbor Freight possesses highly
confidential technical documents that are responsive to Champion's requests for
production, including but not limited to: engineering specifications and design
documents for current and planned generator products; research and development
documentation for fuel switching and regulation technologies; technical analysis and
testing results for advanced capabilities; documentation regarding efforts to develop
or modify accused products and alternative technical approaches; and engineering
evaluations of alternative design approaches and technical solutions. *Id.* ¶ 6.

    Here, there is substantial risk presented by the disclosure of Harbor Freight's
proprietary competitive information to Mr. Ziolkowski and Mr. Fritz because they are
competitive decisionmakers for Champion who could use the information to
formulate new or amended patent applications for Champion that cover the product
features that Harbor Freight is presently developing. The Federal Circuit has
explained that attorneys are *not* competitive decisionmakers if their duties are
administrative, such as "reporting office actions or filing ancillary paperwork," or
they have involvement in "staffing projects or coordinating client meetings, but have
no significant role in crafting the content of patent applications or advising clients on
the direction to take their portfolios." *Deutsche Bank*, 605 F.3d at 1379-80. On the
other hand, attorneys who are "substantially engaged with prosecution" are
competitive decisionmakers; they may have the "opportunity to control the content of
patent applications and the direction and scope of protection sought in those
applications." *Id.* at 1380. These attorneys' activities "may include obtaining
disclosure materials for new inventions and inventions under development,
investigating prior art relating to those inventions, making strategic decisions on the
type and scope of patent protection that might be available or worth pursuing for such

inventions, writing, reviewing, or approving new applications or continuations-in-part of applications to cover those inventions, or strategically amending or surrendering claim scope during prosecution." *Id.*

It is clear that Mr. Ziolkowski and Mr. Fritz engage in activities that are the hallmark of competitive decisionmaking. They are both attorneys at Ziolkowski Patent Solutions Group ("ZPS"), a three-attorney firm Mr. Ziolkowski leads. Huang Decl., Ex. F. According to its website, "the ZPS Group team has prepared and prosecuted thousands of patent applications." *Id.*, Ex. G. ZPS also "assist[s] clients in the creation and management of their . . . patent portfolios," including by providing "[p]atentability, (non-)infringement, and (in-)validity opinions" and advice on "[p]roduct development and *design around*." *Id.* (emphasis added). Mr. Ziolkowski and Mr. Fritz are Registered Patent Attorneys with the U.S. Patent and Trademark Office ("PTO"). *Id.*, Exs. H, I. Mr. Ziolkowski's firm biography states that he "manages a robust patent and trademark preparation and prosecution practice, renders opinions, and educates in the preparation and prosecution of patent applications." *Id.*, Ex. H. His "practice includes counseling small to large corporations on effective filing strategies" and "infringement avoidance counseling at initial product conception." *Id.* Mr. Fritz likewise "specializes in preparing and prosecuting patent applications" and applies "strategies to help his clients protect their inventions." *Id.*, Ex. I.

Indeed, a recent decision from the District of Arizona—in a patent infringement case that Champion brought against another competitor relating to the same patents at issue here—held that "it is clear that Ziolkowski and Fritz qualify as competitive decisionmakers." *Champion Power Equip. Inc. v. Firman Power Equip. Inc.*, No. CV-23-02371-PHX-DWL, 2024 WL 4524187, at *4 (D. Ariz. Oct. 18, 2024). This is because "both attorneys have extensive experience prosecuting patents on behalf of Plaintiff [Champion], including some of the patents at issue in [that] case." *Id.* Champion admitted that it "has retained [ZPS] for many years to, among other things,

prosecute the Patents-in-Suit on [Champion's] behalf." *Id.*  The court noted that "given their longstanding role as [Champion's] outside counsel," it would be "surprising" if Mr. Ziolkowski and Mr. Fritz did not engage in the type of prosecution activities considered to be competitive decisionmaking under the Federal Circuit's test.  *Id.*  And the declaration Mr. Ziolkowski provided in that case confirmed "that he is substantially engaged in the substance of the prosecution activities he performs for [Champion]."  *Id.*  When Champion began threatening to sue Harbor Freight for patent infringement with respect to the patents-in-suit, it was Mr. Ziolkowski himself who sent Harbor Freight a cease and desist letter and raised the issue of licensing negotiations.  Huang Decl., Ex. J; *see Blackbird Tech LCC v. Serv. Lighting & Elec. Supplies, Inc.*, No. CV 15-53-RGA, 2016 WL 2904592, at *1 (D. Del. May 18, 2016) ("A number of district courts have found that individuals who are heavily-involved in businesses that revolve[ ] around the acquisition, enforcement (through litigation), and licensing of patents should be considered competitive decisionmakers[.]") (quotations and citation omitted).

As part of the meet and confer process,[3] Harbor Freight's counsel asked whether "Mr. Ziolkowski and Mr. Fritz intend to continue prosecuting patents for

---

[3]  The parties exchanged drafts of the proposed protective order and thereafter met and conferred on April 9, 2025, regarding their disagreement over whether the protective order should include a patent prosecution bar.  Huang Decl., ¶ 2.  At that meet and confer, Champion stated that it was generally opposed to including any prosecution bar in the protective order, but Harbor Freight offered to provide a narrowed version, which Champion indicated that it would be willing to review.  *Id.* On April 18, Harbor Freight provided to Champion the revised proposed protective order that is attached as Exhibit B to this declaration, which contained a substantially narrowed version of the proposed prosecution bar (the version that Harbor Freight seeks to have issued here).  *Id.* ¶ 2 & Ex. B.  Champion confirmed on May 2, 2025, that it would not agree to even this narrow prosecution bar.  *Id.*  Harbor Freight followed up with questions regarding Champion's attorneys' access to documents and patent prosecution plans.  *Id.*  On May 29, 2025, Champion confirmed that the parties had reached impasse regarding the proposed prosecution bar.  *Id.*

Champion in the future, as they have done in the past." *Id.*, Ex. K. Mr. Fritz did not respond. *Id.* Mr. Ziolkowski responded that he "will not be prosecuting applications for Champion in the future." *Id.* But this response appears contrary to the facts. Both Mr. Ziolkowski and Mr. Fritz are listed as having power of attorney for Champion on the applications for all of the patents at issue in this case. *Id.*, Exs. L, N. Several Champion applications related to the patents-in-suit or disclosing the same subject matter as the patents-in-suit are currently pending (*id.*, Exs. M, N), and there is no evidence that Mr. Ziolkowski has withdrawn from representing Champion with respect to any of those applications. For example, Champion maintains pending continuation applications sharing specifications with the patents-in-suit, creating immediate and persistent danger. *Id.*, Exs. M, N. Continuation applications allow Champion to add entirely new claims while retaining the original priority date— meaning Champion can craft claims specifically targeting Harbor Freight's technical solutions and backdate them to preempt Harbor Freight's development work. 35 U.S.C. § 120. Even if Mr. Ziolkowski's current stated intention is not to prosecute patents for Champion in the future, without a prosecution bar in place, there is nothing to stop him from continuing to represent Champion in the pending continuation applications on the very patents at issue in this case.

**Information Designated to Trigger the Bar**. "[T]he kind of information that will trigger the bar" must be "relevant to the preparation and prosecution of patent applications before the PTO." *Deutsche Bank*, 605 F.3d at 1381. "Courts have drawn a line between financial data and business information, on the one hand, and highly confidential technical information, on the other." *Front Row Techs.*, 125 F. Supp. 3d at 1281. Although financial data or business information "could give a party a competitive edge," it is "irrelevant to a patent application." *Id.* "Highly confidential or technical information such as source code, on the other hand, triggers a prosecution bar." *Id.* Further, "information related to new inventions and technology under development, especially those that are not already the subject of pending patent

1    applications, may pose a heightened risk of inadvertent disclosure by counsel

2    involved in prosecution-related competitive decisionmaking." *Deutsche Bank*, 605

3    F.3d at 1381.

4              Here, the information designated to trigger the proposed bar is firmly related to

5    technology under development.  The prosecution bar in Harbor Freight's proposed

6    protective order would be triggered only by counsel viewing information specifically

7    designated as "HIGHLY CONFIDENTIAL – PROSECUTION BAR."  As proposed,

8    this category includes only information or tangible things "that are technical and of a

9    commercially sensitive nature and relate to *future products or product features* that

10   are *in development or being considered for development*."  Huang Decl., Ex. B

11   (emphasis added).  Thus, only information about future products or product features

12   will trigger the bar—information that is extremely sensitive and which the Federal

13   Circuit specifically noted poses a "heightened risk" of inadvertent disclosure.  Indeed,

14   Harbor Freight's proposal explicitly states that "[t]his designation is not intended to

15   apply to information about products that are currently available to the public on the

16   market, except to the extent that the information relates to future changes or

17   improvements to those products."  *Id.*

18             This narrowing of the bar to future products or product features is a significant

19   compromise by Harbor Freight.  Many cases have approved prosecution bars that are

20   triggered not only by such future product information, but also by specific technical

21   information about products already on the market.  *See Karl Storz Endoscopy-*

22   *America, Inc. v. Stryker Corporation*, No. 14-cv-00876-RS (JSC), 2014 WL 6629431,

23   at *2-4 (N.D. Cal. Nov. 21, 2014) (approving prosecution bar that applied to

24   information about existing products and rejecting argument that "prosecution bars are

25   only relevant to information about new inventions and technology still under

26   development"); *Universal Electronics Inc. v. Roku, Inc.*, No. 8:18-01580 JVS

27

28

(ADSx), at *8-10 (C.D. Cal. Mar. 8, 2019)[4] (adopting "prosecution bar that covers both new and existing technologies and products") (collecting cases). Nevertheless, Harbor Freight has proposed this reasonable limitation—which Champion also rejected—to reduce any potential burden to Champion.

*Scope of activities prohibited by the bar*. Harbor Freight's proposal provides that an attorney who receives items designated as "HIGHLY CONFIDENTIAL – PROSECUTION BAR"

> shall not be involved, directly or indirectly, in any of the following activities: (i) preparing, prosecuting, supervising, or otherwise assisting in the preparation or prosecution of any patent application related by claim of priority to any of the Patents-in-Suit; (ii) amending any claim of any of the Patents-in-Suit; and (iii) advising on, consulting on, preparing, prosecuting, drafting, editing, and/or amending of patent applications, specifications, claims, and/or responses to office actions, or otherwise affecting the scope of claims in patent applications relating to the structures/and or functionality accused of infringing the Patents-in-Suit before any foreign or domestic agency, including the United States Patent and Trademark Office.

Huang Decl., Ex. B.

These are all substantive patent prosecution activities, not merely administrative and, as such, the scope of prohibited activities is appropriately narrow. *See, e.g.*, *Front Row Techs.*, 125 F. Supp. 3d at 1296 (approving bar on "prosecution activity," including "(1) preparing and/or prosecuting any patent application, or portion thereof, whether design or utility, either in the United States or abroad; (2) preparing patent claim(s) for any application or patent; or (3) providing advice, counsel, or suggestions regarding, or in any other way influencing, claim scope and/or

---

[4] Attached as Exhibit O to Huang Decl.

language, embodiment(s) for claim coverage, claim(s) for prosecution, or products or processes for coverage by claim(s)"); *Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc.*, No. C-09-02180 SBA DMR, 2011 WL 197811, at *2 & n.1 (N.D. Cal. Jan. 20, 2011) (approving bar on "patent prosecution," including "directly or indirectly drafting, amending, advising or otherwise affecting the scope or maintenance of patent claims").

The proposed bar specifically exempts certain patent prosecution activities that are administrative in nature, further limiting it in scope. It includes language to clarify that the bar "shall not preclude counsel from taking an administrative role in patent prosecution or maintenance, such as paying patent maintenance fees, correcting a typographical error in an application's specification or paying the issue fee in an application." Huang Decl., Ex. B. It also states that it "shall not preclude counsel from participating in post-grant proceedings on behalf of a Party challenging or defending the validity of any patent, including, but not limited to, as part of any reexamination, *inter partes* review, or reissue proceedings," so long as counsel does not participate in "drafting, amending, or altering the language of any patent claim(s) in any such proceeding." *Id.* This is standard in patent prosecution bar provisions in protective orders. Thus, the scope of the prohibited activities is narrowly tailored.

***Duration of the Bar***. The proposed prosecution bar "shall end two (2) years after the final resolution of this Action, including all appeals." *Id.* "District courts throughout the country have approved this duration." *Front Row Techs.*, 125 F. Supp. 3d at 1291 (approving prosecution bar ending "two (2) years following the entry of a final, non-appealable judgment or order or the complete settlement of all claims against all Parties in this action"); *see also Applied Signal Tech.*, 2011 WL 197811, at *2 (holding that "[t]he duration of the bar, two years after final disposition of the action, is not unreasonable"); *Telebuyer, LLC v. Amazon.com, Inc.*, No. 13-CV-1677, 2014 WL 5804334, at *7 (W.D. Wash. July 7, 2014) (approving two-year bar and noting that "[a] two-year bar is suggested in the Northern District's model order" on

prosecution bars); *Ameranth, Inc. v. Pizza Hut, Inc.*, No. 3:11-CV-01810-JLS, 2012 WL 528248, at \*7 (S.D. Cal. Feb. 17, 2012) (approving bar ending "two (2) years after final termination of this action" and noting that "[t]he purpose of the bar is to prevent inadvertent disclosure of confidential information.  A two-year bar fulfills this purpose more so than a one-year bar, as the confidential information will be less readily available in the memory of counsel."); *Universal Electronics Inc. v. Roku, Inc.*, No. 8:18-01580 JVS (ADSx), at \*12-13 ("[C]ourts routinely hold that two-year-long prosecution bars are reasonable.") (collecting cases).

   ***Subject matter covered by the bar***.  A prosecution bar "should be coextensive with the subject matter of the patents-in-suit."  *Applied Signal Tech.*, 2011 WL 197811, at \*3.  Here, as noted above, the bar prevents an attorney subject to it from prosecuting patents "related by claim of priority to any of the Patents-in-Suit," "amending any claim of any of the Patents-in-Suit," and engaging in activities "affecting the scope of claims in patent applications relating to the structures/and or functionality accused of infringing the Patents-in-Suit."  Huang Decl., Ex. B.  It is thus narrowly limited to activity for patents related to the patents-in-suit or the structures or functionality accused of infringing them.  *See Karl Storz*, 2014 WL 6629431, at \*4 (bar on prosecuting patents "relating to the subject matter of this action" was reasonable); *DeCurtis LLC v. Carnival Corp.*, No. 20-22945-CIV, 2021 WL 38265, at \*11 (S.D. Fla. Jan. 5, 2021) (finding that "[t]his factor has been met in this case because the subject matter of the prosecution bar is the same as the subject matter of the patents"); *Digital Empire Ltd. v. Compal Elecs. Inc. Grp.*, No. 14-CV-1688-DMS(KSC), 2015 WL 10857544, at \*2 (S.D. Cal. July 20, 2015) (approving bar on prosecuting patents "relating to touchscreen technology, including without limitation the patents asserted in this action and any patent or application claiming priority to or otherwise related to the patents asserted in this action").

**B.     Champion cannot show that either Mr. Ziolkowski or Mr. Fritz is entitled to an exemption from the prosecution bar**

There is no basis for Mr. Ziolkowski and Mr. Fritz to receive an exemption from the prosecution bar.  Champion must show, "on a counsel-by-counsel basis," that Mr. Ziolkowski and Mr. Fritz's representation of Champion before the PTO "does not and is not likely to implicate competitive decisionmaking related to the subject matter of the litigation." *Deutsche Bank*, 605 F.3d at 1381.  But as explained *supra* Section II.A, Mr. Ziolkowski and Mr. Fritz are competitive decisionmakers for Champion, they are attorneys of record on pending patent applications before the PTO and have not withdrawn, and Champion seeks in discovery information that includes Harbor Freight's new product features.

Additionally, Champion must show that the potential injury to it from "restrictions imposed on its choice of litigation and prosecution counsel" outweighs the potential injury to Harbor Freight caused by the inadvertent use of Harbor Freight's confidential information. *Deutsche Bank*, 605 F.3d at 1381.  It cannot make that showing.  "In making this determination, the court should consider such things as the extent and duration of counsel's past history in representing the client before the PTO, the degree of the client's reliance and dependence on that past history, and the potential difficulty the client might face if forced to rely on other counsel for the pending litigation or engage other counsel to represent it before the PTO." *Id.*

In this litigation, Champion is represented by two sets of counsel: Mr. Ziolkowski and Mr. Fritz of ZPS, and at least five attorneys from the firm Husch Blackwell LLP.[5]  The Husch Blackwell attorneys appeared in this action prior to Mr. Ziolkowski and Mr. Fritz, and have signed all pleadings and argued at all hearings to date.  Based on the available information and the consistent representations by

---

[5]  Husch Blackwell attorneys Karen Luong, Thomas Heneghan, Kimberly Gutierrez, Jennifer Hoekel, and Sharif Ahmed have all appeared in this action.

counsel, the Husch Blackwell attorneys do not appear to be competitive decisionmakers to whom the prosecution bar should apply.

Given Champion's other capable litigation counsel from Husch Blackwell who will not be subject to the bar, it will not be prejudiced if Mr. Ziolkowski and Mr. Fritz cannot review the limited set of materials at issue. By the terms of Harbor Freight's proposed protective order, only materials that are both technical and relate to future products or product features can receive the "HIGHLY CONFIDENTIAL – PROSECUTION BAR" designation. Thus, Mr. Ziolkowski and Mr. Fritz could review technical documents relating to the current iterations of the accused products and all non-technical documents, and still prosecute patents for Champion. Or they could choose to forego prosecuting patents in this subject matter and review the documents relating to Harbor Freight's future products and product features. They could even split the work; since Mr. Ziolkowski claims that he no longer intends to prosecute patents for Champion in any event (Huang Decl., Ex. K), he could choose to review the designated materials while Mr. Fritz does not. So long as Mr. Ziolkowski withdraws from representing Champion with respect to the pending patent applications and implements an ethical wall at ZPS, Mr. Ziolkowski could review the materials to assist Champion in this litigation while Mr. Fritz handles the patent prosecutions.[6]

Champion may argue, as it did in the *Firman* litigation, that Mr. Ziolkowski and Mr. Fritz are critical to the litigation because they have a long history with Champion and know the patents-in-suit well. *Firman*, 2024 WL 4524187, at *5. But as the Federal Circuit has explained, "the factors that make an attorney so valuable to a party's prosecution interests are often the very factors that subject him to the risk of

---

[6] There is another Registered Patent Attorney at ZPS, Michael Carton, who does not appear to be involved in this litigation and therefore may be able to assist with Champion's patent prosecutions, assuming an ethical wall is in place. Huang Decl., Ex. F (https://zpspatents.com/our-team/).

inadvertent use or disclosure of proprietary competitive information acquired during litigation." *Deutsche Bank*, 605 F.3d at 1381.  In *Firman*, as noted above, the court found Mr. Ziolkowski and Mr. Fritz to be competitive decisionmakers, but determined not to issue a prosecution bar because—unlike here—***Firman did not contend*** that the information that would trigger the bar "relate[d] to new inventions or technology under development—instead, [it] relate[d] to inventions that are already patented and released on the market."   *Firman*, 2024 WL 4524187, at *6.  The court therefore found that the information at issue there did not raise the same "level of heightened concern" as information related to unreleased products or inventions.  *Id.*; *see also Deutsche Bank*, 605 F.3d at 1381 (noting that information about technology under development poses a "heightened risk of inadvertent disclosure by counsel involved in prosecution-related competitive decisionmaking").  This distinguishes *Firman* from the circumstances here, where only information about new products or product features would trigger the bar.

Although Champion may be somewhat inconvenienced by the prosecution bar, this inconvenience does not outweigh the very real risk of harm to Harbor Freight from the disclosure of its highly confidential plans for future products.  *See DeCurtis*, 2021 WL 38265, at *9 (issuing prosecution bar and noting that "even if the coordination among different teams of lawyers or law firms is a burden, Carnival has failed to show how it outweighs the potential harm that DeCurtis could suffer if certain technical information produced in this case is used to modify Carnival's patents to read directly onto DeCurtis's systems"); *Karl Storz*, 2014 WL 6629431, at *4 (issuing bar where objecting party had not shown a "legitimate need to have every single one of its attorneys exempt from a patent prosecution bar, let alone a need that outweighs Defendant's need to protect against inadvertent disclosure"); *Digital Empire*, 2015 WL 10857544, at *8 (declining to exempt attorneys from prosecution bar and noting that if they are unwilling to be subject to the bar, "Plaintiff may add new attorneys to its legal team and implement ethical walls to prevent the release of

protected information"). If this Court issues a prosecution bar, it "would not force Mr. [Ziolkowski] and Mr. [Fritz] to abandon this litigation" but rather merely to "make a choice: either prosecute patents in this family of patents, or litigate the patents at issue, but not both." *Front Row Techs.*, 125 F. Supp. 3d at 1295 (issuing prosecution bar). Ultimately, Champion will not be prejudiced if Mr. Ziolkowski and Mr. Fritz are subject to the prosecution bar. In contrast, if Harbor Freight must disclose its highly confidential product development plans with no prosecution bar in place, Champion could use those disclosures—inadvertently or not—to add new claims to its existing patents that cover Harbor Freight's new inventions, usurping its valuable intellectual property.

## III.    CONCLUSION

Harbor Freight respectfully requests that the Court issue its proposed protective order containing its proposed patent prosecution bar, attached as Exhibit B to the Huang Decl.

## DEFENDANT CHAMPION POWER EQUIPMENT, INC.'S OPPOSITION TO PLAINTIFF'S PROPOSED PATENT PROSECUTION BAR

Champion Power Equipment, Inc. ("Champion") respectfully submits this opposition to Plaintiff Harbor Freight Tools USA, Inc.'s ("Harbor Freight") request for a patent prosecution bar in the parties' proposed protective order.

## I.    INTRODUCTION

Champion opposes Harbor Freight's request to impose a patent prosecution bar in this litigation. While Champion agrees that a protective order is appropriate to safeguard the parties' confidential information, Harbor Freight's proposed prosecution bar is unnecessary, overbroad, and would unduly prejudice Champion. The protective order, without the prosecution bar, with its robust confidentiality protections, is more than sufficient to prevent any misuse of confidential information. Harbor Freight has not met its burden to demonstrate that the extreme remedy of a prosecution bar is warranted under the facts of this case.

1   Harbor Freight seeks the entry of this prosecution bar in order to hamper
2   Champion's ability to present a robust infringement case. Champion has retained two
3   sets of counsel in this matter: Messrs. Timothy Ziolkowski ("Ziolkowski") and Jacob
4   Fritz ("Fritz") of Ziolkowski Patent Solutions Group, SC ("ZPS") (who are also
5   retained in three other related cases[7] alleging infringement of the same patents, and
6   four *Inter Partes* Review proceedings ("IPRs") at the United States Patent and
7   Trademark Office[8]) and lawyers of the Husch Blackwell LLP firm (who are retained
8   in only two of the four cases along with the IPRs). Ziolkowski is the owner and
9   manager of ZPS, and Fritz is a senior attorney with ZPS. [Declaration of Timothy J.
10  Ziolkowski, attached hereto as Exhibit 1 ("Ziolkowski Decl.") at ¶¶ 1–2.] ZPS
11  prosecuted the Patents-in-Suit. [Declaration of Dennis Trine, attached hereto as
12  Exhibit 2 ("Trine Decl.") at ¶¶ 3–4.] Husch Blackwell does not prosecute patents on
13  behalf of Champion. [*Id*. at ¶ 6.] Harbor Freight's request for a patent prosecution bar
14  is a delay tactic apparently calculated to increase Champion's litigation costs and to
15  prevent Champion from viewing Harbor Freight's documents that it has refused to
16  produce until Champion agrees to be bound by the prosecution bar or this Court enters
17  the same. Champion has offered to enter into a Protective Order without the
18  prosecution bar to keep this case moving along and allow Harbor Freight to file its
19  motion, but Harbor Freight refused.

---

[7] *Champion Power Equipment, Inc. v. Firman Power Equipment Inc.*, Case No. 23-cv02371-PHX-DWL (D. Ariz.); *Champion Power Equipment, Inc. v. Generac Power Systems Inc.*, Case No. 24-cv-01281-LA (E.D. Wis.); and *Champion Power Equipment, Inc. v. Westinghouse Electric Corp.*, Case No. 25-cv-00239-ART-CLB (D. Nev.).

[8] *Generac Power Systems, Inc. et al. v. Champion Power Equipment, Inc.*, Case No. IPR2025-00951 (P.T.A.B.); *Generac Power Systems, Inc. et al. v. Champion Power Equipment, Inc.*, Case No. IPR2025-01121 (P.T.A.B.); *Generac Power Systems, Inc. et al. v. Champion Power Equipment, Inc.*, Case No. IPR2025-01099 (P.T.A.B.); and *Generac Power Systems, Inc. et al. v. Champion Power Equipment, Inc.*, Case No. IPR2025-01121 (P.T.A.B.).

## II. <u>LEGAL STANDARD</u>

Patent prosecution bars are analyzed under Federal Circuit law to maintain a uniform standard across patent cases. *In re Deutsche Bank Tr. Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010). A patent prosecution bar is a form of protective order that, when implemented, bars an attorney from prosecuting patents within a specific technical area for its clients during a time-limited period. *Id.* at 1376. Like any other protective order issued in federal court, the movant bears the burden of demonstrating good cause such that the protective order should issue. *Id.* at 1378 ("A party seeking a protective order carries the burden of showing good cause . . . to include in a protective order a provision effecting a patent prosecution bar."); Fed. R. Civ. P. 26(c)(1).

Because a prosecution bar eliminates counsels' ability to prosecute patents for a particular client, the *movant* must demonstrate the applicability of the prosecution bar on a counsel-by-counsel basis. *See Deutsche Bank*, 605 F.3d at 1378–79 (acknowledging the counsel-by-counsel "competitive decision making test" set forth in *U.S. Steel Corp. v. U.S.*, 730 F.2d 1465 (Fed. Cir. 1984) is the correct analysis).

The Federal Circuit's decision in "*Deutsche Bank* sets forth four factors this Court must evaluate when determining whether and under what circumstances a patent prosecution bar should be imposed." *Digital Empire Ltd. v. Compal Elects. Inc. Grp.*, 2015 WL 10857544, at *2 (S.D. Cal. July 20, 2015).

> First, the Court must determine whether the facts of this case present a risk of inadvertent disclosure. Second, "the district court must balance the potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice." Third, the "party seeking imposition of a patent prosecution bar must show that the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information." Fourth, the Court may consider whether any attorneys should be exempted from the prosecution bar.

*Id.* (quoting *Deutsche Bank*, 605 F.3d at 1380-81).

As to the first factor, "[t]he party seeking a patent prosecution bar bears the burden to first show that there is an 'unacceptable' risk of inadvertent disclosure of confidential information." *Helferich Pat. Licensing, LLC v. Suns Legacy Partners, LLC*, No. CV-12-00100-PHX-NVW, 2012 WL 6049746, at *1 (D. Ariz. Dec. 5, 2012); *see also Deutsche Bank*, 605 F.3d at 1378; *Tech Pharmacy Servs., LLC v. Alixa RX LLC*, No. 4:15-CV-00766, 2016 WL 6071601, at * 1 (E.D. Tex. Oct. 17, 2016). "To determine whether there is such an unacceptable risk, courts examine the extent to which counsel is involved in 'competitive decisionmaking' with its client." *Helferich*, 2012 WL 6049746, at *1. Competitive decisionmaking considers "counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Deutsche Bank*, 605 F.3d at 1378 (*quoting U.S. Steel Corp.*, 730 F.2d at 1468 n.3). In other words, the attorney works so closely with the business, any insight into a competitor's product risks inadvertent disclosure or competitive use of those highly confidential materials. *Id.*

Secondly, if the Court is satisfied that there are unacceptable risks of inadvertent disclosure of confidential information, the Court then evaluates the potential harm to the opposing party that would come from the restrictions imposed on that party's right to have the benefit of the counsel of its choice. *Id.* at 1380–81; *Helferich*, 2012 WL 6049746, at *2. Factors include: (a) the extent and duration of the client's representation; (b) the degree of the client's reliance and dependence on that past history; and (c) the difficulty the client may face in being forced to rely on new counsel in the pending litigation or to engage other counsel to represent it before the USPTO. *Deutsche Bank*, 605 F.3d at 1381; *see also Helferich*, 2012 WL 6049746, at *2. As part of this analysis, the Court considers exactly what type of confidential information is at issue—*e.g.*, new inventions, currently pending technology, or not-yet patented technology. *Deutsche Bank*, 605 F.3d at 1381. The Court must be

"satisfied that the kind of information that will trigger the bar is relevant to the preparation and prosecution of patent applications before the PTO." *Id.*; *Helferich*, 2012 WL 6049746, at *2 ("[A] party seeking a prosecution bar also has the burden to show that the proposed bar 'reasonably reflect[s] the risk presented by the disclosure of proprietary competitive information.' Such a showing requires that the information said to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar all reasonably reflect the risk presented by disclosure.").

For the third factor, the "party seeking imposition of a patent prosecution bar must show that the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information balances the risk of inadvertent use or disclosure of the confidential information against the harm of a prosecution bar." *Id.*

Lastly, if the prosecution bar is entered, the court must determine whether any of the entered counsel may be exempted from the bar because their involvement in patent prosecution does not constitute engagement with the client in any competitive decisionmaking. *Id.* at 1379-80. When attorneys do not have a "significant role in crafting the content of patent applications or advising clients on the direction to take their portfolios," the opportunity to engage with the client in competitive decisionmaking in the context of patent prosecution is remote. *Id.* at 1380. Counsel may only be "involved in high-altitude oversight of patent prosecution, such as staffing projects or coordinating client meetings" or have "patent prosecution duties that involve little more than reporting office actions or filing ancillary paperwork, such as sequence listings, formal drawings, or information disclosure statements." *Id.* at 1379-80. "There is little risk that attorneys involved solely in these kinds of prosecution activities will inadvertently rely on or be influenced by information they may learn as trial counsel during the course of litigation." *Id.* at 1380. Under these

1  circumstances, "a judge may find that the attorney is properly exempted from a
2  prosecution bar." *Id.*

3  **III.   HARBOR FREIGHT FAILS TO SHOW GOOD CAUSE FOR A**
4  **PROSECUTION BAR**

5  **A.    The Facts of this Case do not present a risk of inadvertent disclosure**
6  **and ZPS attorneys are not competitive decisionmakers.**

7      Harbor Freight's argument rests on the generalized assertion that the disclosure
8  of its confidential technical information could, even inadvertently, influence
9  Champion's prosecution of related patent applications. But Harbor Freight offers no
10 concrete evidence that such a risk is real or imminent in this case. The mere possibility
11 of inadvertent use of information is not sufficient; there must be a specific, credible
12 showing of risk. *See Deutsche Bank*, 605 F.3d at 1381.

13     Moreover, the existing protective order already prohibits any use of
14 confidential information for any purpose other than this litigation. Attorneys are
15 officers of the court and are bound by both the protective order and their ethical
16 obligations. Courts routinely rely on these safeguards to prevent misuse of
17 confidential information. *See, e.g., Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525,
18 530 (N.D. Cal. 2000) ("The court must trust attorneys to abide by the protective order
19 and their ethical obligations."). Harbor Freight is a relative newcomer in the multi-
20 fuel portable generator market and does not have a long-standing research and
21 development team, only entering the multi-fuel portable generator market in less than
22 two years ago. *Trine Declaration* at ¶ 11. In fact, Harbor Freight hired a long-time
23 employee of Champion's, who was Champion's Product Manager for 11 years, to
24 bolster their team. *Id.* at ¶ 10. This action resulted in a state lawsuit involving
25 allegations of unfair competition and violations of a restrictive employment
26 agreement. Harbor Freight's entry in the multi-fuel portable generator market was
27 only possible by utilizing Champion's intellectual property.

28

1    Harbor Freight argues above that "…Champion will not suffer any prejudice,
2    given that Champion is already represented in this lawsuit by lawyers at a different
3    firm who could review the limited information at issue for purposes of the litigation
4    while Mr. Ziolkowski and Mr. Fritz retain their ability to prosecute patents for
5    Champion." *Supra* at 3. However, Harbor Freight does not specify the exact types of
6    information that it seeks to prevent the ZPS lawyers from reviewing. Instead, it
7    generically references future products without any limitation to information specific
8    to the technology at issue—multi-fuel portable generators. Harbor Freight's
9    allegations of harm are purely speculative.

10    The parties' agreed protective order already provides for robust confidentiality
11    designations, including "Attorneys' Eyes Only" status for the most sensitive
12    information. This is a well-established mechanism for protecting confidential
13    technical information in patent litigation. If Harbor Freight believes that a particular
14    document is so sensitive that even these protections are insufficient, it can raise that
15    issue with the Court on a case-by-case basis. There is no need for a blanket
16    prosecution bar. *Iconfind, Inc. v. Google, Inc.*, No. 2:11-cv-0319-GEB-JFM, 2011
17    WL 3501348, at *4-5 (E.D. Cal. Aug. 9, 2011) (court declined to enter prosecution
18    bar where there was no reason for court to believe that counsel will not strictly follow
19    the protective order).

20    **B.**    **The balance of potential harm to the opposing party from**
21            **restrictions imposed on that party's right to have the benefit of**
22            **counsel of its choice disfavors the prosecution bar.**

23    Harbor Freight's proposal would prevent Champion's long-standing patent
24    counsel, Mr. Ziolkowski and Mr. Fritz, from participating in both this litigation and
25    ongoing prosecution of Champion's patent applications. These attorneys have unique
26    knowledge of Champion's technology, patent portfolio, and strategic objectives.
27    Excluding them from either role would significantly handicap Champion's ability to
28

1  defend its intellectual property and to coordinate its litigation and prosecution

2  strategies.

3       The Federal Circuit has recognized that "[t]he factors that make an attorney so

4  valuable to a party's prosecution interests are often the very factors that subject him

5  to the risk of inadvertent use or disclosure of proprietary competitive information

6  acquired during litigation." *Deutsche Bank*, 605 F.3d at 1381. Here, the prejudice to

7  Champion is concrete and significant, while the risk to Harbor Freight is speculative

8  at best. In fact, Judge Lanza, in a related case[9], stated the following, despite his view

9  that Mr. Ziolkowski and Mr. Fritz are competitive decisionmakers[10]:

10
11       "[T]he extent and duration of counsel's past history in representing the
         client before the PTO, the degree of the client's reliance and dependence
12       on that past history, and the potential difficulty the client might face if
         forced to rely on other counsel for the pending litigation or engage other
13       counsel to represent it before the PTO." *Deutsche Bank*, 650 F.3d at
         1381. The evidence before the Court establishes that Ziolkowski and
14       Fritz have a lengthy and substantial history representing Plaintiff before
         the PTO—as noted, Plaintiff "exclusively uses ZPS to prepare and
15       prosecute its patent applications" (Doc. 79 at 11)— and that Plaintiff will
         rely heavily on that experience in this case. It follows, in the Court's
16       view, that Plaintiff would suffer significant prejudice if forced to rely on
         other counsel in this case. Courts have declined to impose prosecution
17       bars under analogous circumstances. *See, e.g., Helferich*, 2012 WL
         6049746 at *3 ("Helferich clearly has a strong interest in choosing its
18       own counsel—particularly in the complex and technical realm of patent
         litigation . . . [and] Counsel for Helferich . . . have represented Helferich
19       both in litigation and before the PTO for many years and are deeply
         familiar with the patents at issue here. Depriving Helferich of the
20       specialized representation that its counsel can provide in this case would
         force them to rely on less knowledgeable counsel, either in this litigation
21       or before the PTO, and thus increase costs and duplicate effort.")
         (cleaned up); *Trading Techs. Int'l. Inc. v. GL Consultants, Inc.*, 2011 WL
22       148252, *7 (N.D. Ill. 2011) ("[T]he factors in the balancing test weigh
         against imposing the restriction on Mr. Borsand (and on TT) that
23       defendants seek. Mr. Borsand is TT's lead trial counsel and is intimately
         involved in TT's overall litigation strategy. As such, TT would face
24       serious difficulty if forced to rely on outside counsel rather than Mr.
         Borsand to the extent that Defendants propose. . . . Defendants do not

25  _____
26  [9] *Champion Power Equipment, Inc. v. Firman Power Equipment Inc.*, Case No. 23-
    cv02371-DWL (D. Ariz.).

27  [10] Mr. Ziolkowski provides herein a Declaration addressing Judge Lanza's criticism
28  of the Ziolkowski Declaration in the *Firman* case.

explain how Mr. Borsand could competently discharge his responsibilities as TT's lead counsel while at the same time being kept wholly in the dark as to significant categories of evidence. Defendants' alternative suggestion that TT would not be prejudiced if Mr. Borsand could not continue to act as lead counsel is likewise a non-starter. Mr. Borsand has been TT's lead counsel in litigation involving the patents-in-suit since 2003, and he is now its lead counsel in thirteen suits in this court involving these patents. He has also tried one case involving the patents-in-suit to a successful jury verdict in 2007. The idea that TT would be unscathed if it lost Mr. Borsand's involvement as lead counsel blinks reality, and ignores the weight to be given to a party's choice of what counsel will represent it in major litigation.") (citations omitted). In reaching this conclusion, the Court acknowledges that "[t]his is no easy balancing act . . . since the factors that make an attorney so valuable to a party's prosecution interests are often the very factors that subject him to the risk of inadvertent use or disclosure of proprietary competitive information acquired during litigation." *Deutsche Bank*, 605 F.3d at 1381.

## 1.    Disruption of Ongoing and Future Prosecution and Litigation

Champion relies on its ZPS counsel for the ongoing prosecution and management of its patent portfolio, including prosecution of continuations and amendments necessary to protect its innovations. Forcing Champion to retain new counsel, or to wall off its experienced counsel, would result in loss of institutional knowledge, increased costs, and inefficiency. Harbor Freight's suggestion that Champion simply rely on other litigation counsel ignores the specialized knowledge and continuity required for effective patent prosecution.

Champion has retained ZPS as patent prosecution counsel, among other things, for many years. *Trine Declaration* at ¶ 3. While not competitive decisionmakers, ZPS counsel has filed patent claims in the Patents-in-Suit in response to instructions from Champion employees. *Ziolkowski Declaration* at ¶¶ 7, 10. Accordingly, there are no attorneys more familiar with the prosecution history associated with the Patents-in-Suit than ZPS counsel. As with all patent litigation, this suit comes down to an element-by-element analysis of the claimed language in the Patents-in-Suit compared to the Infringing Products. Excluding Mr. Ziolkowski and Mr. Fritz from accessing Harbor Freight's information (which Harbor Freight failed to adequately identify) irreparably harms Champion. It is not merely a matter of new counsel getting up to

speed. No one knows the Patents-in-Suit better than Champion's currently employed patent counsel, and the decade of familiarity with the publicly issued patent claims' associated prosecution histories[11] are irreplaceable without extreme and undue expense, especially considering that this is a complex case involving 13 Patents-in-Suit. *See U.S. Steel Corp*, 730 F.2d at 1468 (denying a patent prosecution bar, in part, because of the complex nature of the litigation). Further, since Champion exclusively uses ZPS to prepare and prosecute its patent applications, forcing Champion to hire new counsel for future patent application filing and prosecution would be a great hardship to Champion. *See Deutsche Bank*, 605 F.3d at 1381.

Also, if ZPS counsel were not allowed to participate in this litigation, it would prevent Champion from using its long-time counsel as a bridge between various law firms prosecuting the four above-referenced patent infringement cases. Mr. Ziolkowski is lead counsel in the four cases, and Mr. Ziolkowski and Mr. Fritz are Champion's only counsel in common on each of the four cases. *Id.* at ¶¶ 13-14. ZPS counsel analyzed all the infringing products in the four cases, prepared the detailed claim charts and infringement contentions, and drafted the complaints in all four cases. *Id.* at ¶ 14.

Barring Mr. Ziolkowski and Mr. Fritz from assisting in either this litigation or Champion's prosecution of its patents would be penalizing ZPS and Champion for their long-standing relationship.

### 2.    Imbalance of Harm

---

[11] This distinguishes ZPS's knowledge from Harbor Freight's concern about competitive decisionmaking. While another attorney theoretically could spend hundreds of hours re-learning information from publicly available USPTO records, that tremendous burden and cost is not warranted, especially when Harbor Freight failed to show good cause for any prosecution bar covering hypothetical confidential information Harbor Freight has not disclosed.

The harm to Champion from the proposed bar is real and tangible, affecting its ability to defend itself and protect its intellectual property. By contrast, Harbor Freight's claimed risk is speculative and can be addressed by the existing protective order. Courts routinely deny prosecution bars where, as here, the burden on the opposing party outweighs any demonstrated risk. *See, e.g., Telebuyer, LLC v. Amazon.com, Inc.*, No. 13-CV-1677, 2014 WL 5804334, at *7 (W.D. Wash. July 7, 2014) (denying bar where prejudice to defendant outweighed plaintiff's speculative concerns). The harm to Harbor Freight is merely speculative. Neither Harbor Freight's argument nor the declaration by Mr. Mina Atta—Harbor Freight's Senior Lead Engineer, Product Development—specifically identifies information or documents that Harbor Freight has in its possession, is responsive to any of Champion's discovery requests, and would have any potential impact prosecution of patent applications related to the Patents-in-Suit. Rather, Harbor Freight generically identifies "technical development materials for multiple categories," including the following:

> [E]ngineering specifications and design documents for current and planned generator products; research and development documentation for fuel switching and regulation technologies; technical analysis and testing results for generator performance; documentation regarding efforts to develop or modify accused products and alternative technical approaches; and engineering evaluations of alternative design approaches and technical solutions.

*Supra* at 6; *Atta Mina Declaration* at ¶ 6. However, Harbor Freight is unclear as to whether any materials actually exist for future products or product development in these categories, whether any such materials only exist for current products, or how any such existing materials are relevant to the asserted claims of the Patents-in-Suit. The categories of materials identified by Harbor Freight are broad and are not limited to subject matter relevant to the inventions claimed in the Patents-in-Suit. The Patents-in-Suit are not directed to any type of generator or any generator component (for example, product development related to a carbon monoxide sensor would be irrelevant), and Harbor Freight has not adequately explained what materials exist and

how they are so relevant as to impact what Champion might do with its pending patent applications. Mere conjecture that Champion might be able to use some hypothetical information from possibly existing materials is not enough to warrant a prosecution bar. *See, e.g., Telebuyer* at \*7.

### C. **Scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information.**

Harbor Freight's proposed bar is not narrowly tailored. It would bar Champion's long-standing patent counsel from a wide range of prosecution activities, including work on pending continuations and amendments, for a full two years after this litigation ends, plus any appeals. The bar covers not only the Patents-in-Suit but also any remotely related subject matter, regardless of whether there is any plausible risk of competitive harm. Harbor Freight's proposed prosecution bar would apply to the following "Information or Items":

> [I]nformation (regardless of how it is generated, stored or maintained) or tangible things that are technical and of a commercially sensitive nature and relate to future products or product features that are in development or being considered for development. This includes, but is not limited to, marketing or business requirements documents that describe technical features or details of future products, business plans that describe technical features or details of future products, product development information, engineering documents for future products or product features, testing documents for future products or product features, research and development information, trade secrets relating to future products or product features, non-public patent prosecution information, and information regarding intellectual property protection strategies and steps. This designation is not intended to apply to information about products that are currently available to the public on the market, except to the extent that the information relates to future changes or improvements to those products.

*Huang Declaration*, Ex. B at 4. This language encompasses a substantial amount of information that is not relevant to the technology at issue in this case—multi-fuel generators. Harbor Freight presents its proposal as reasonable by emphasizing references to "future products;" however, these broad categories encompass extensive subject matter. Harbor Freight has not demonstrated any actual risk if such

information were accessible to the Champion legal team, making it unsuitable for inclusion in this bar.

Harbor Freight also mischaracterizes the prosecution bar arguing that it only covers the lawyers at ZPS. However, as written, the bar is broad and would prevent *anyone* with access to the documents from prosecuting patents until two years following the conclusion of any appeals in this case, not just those at ZPS.

Additionally, Harbor Freight suggests that Mr. Ziolkowski must withdraw from the Power of Attorney ("POA") in the patent applications. However, such a suggestion goes against the proposed bar, as noted by Harbor Freight above: "The proposed bar specifically exempts certain patent prosecution activities that are administrative in nature, further limiting it in scope. It includes language to clarify that the bar 'shall not preclude counsel from taking an administrative role in patent prosecution or maintenance, such as paying patent maintenance fees, correcting a typographical error in an application's specification or paying the issue fee in an application.'" *Supra* at 12. As Harbor Freight knows (or should), while an attorney can pay maintenances fees on behalf of client without a Power of Attorney, an attorney cannot correct a typo in the specification or pay the issue fee, among other administrative-type activities. It is unreasonable to so limit Mr. Ziolkowski by withdrawing the POA and then have to refile another later in order to perform a task permitted by the prosecution bar. These administrative tasks are exactly the extent of Mr. Ziolkowski's involvement in these patent matters—paying application filing and issue fees. *Ziolkowski Declaration*, at ¶ 12. Courts routinely reject such overbroad prosecution bars. *See, e.g., Vasudevan Software, Inc. v. Int'l Bus. Machines Corp.,* No. C09-05897 RS (HRL), 2011 WL 1599646, at *3 (N.D. Cal. Apr. 27, 2011) (rejecting prosecution bar where "the proposed bar is not narrowly tailored to the risks presented by the disclosure of proprietary information").

In *Helferich Pat. Licensing, LLC*, 2012 WL 6049746, the Court addressed a specific scenario in which counsel essentially conceded competitive

decisionmaking—when counsel was heavily involved in the terms and pricing decisions for licensing the patents. *Helferich* at *2. In balancing the harm against the risk of inadvertent disclosure, the *Helferich* court ultimately denied the patent prosecution bar because "Defendants [did] not identify any specific confidential information that could be misused, apart from broad allegations of potential harm." *Id.* at *3 ("[T]he information Defendants identify is merely broad categories of information [that] are non-public and confidential.") (*internal quotations omitted*). The court further explained that good cause to enter a prosecution bar required "particular and specific demonstration[s] of fact, as distinguished from stereotyped and conclusory statements." *Id.* (*quoting AmTab Mfg. Corp*, 2012 WL 195027, at *2). For the same reasons, Harbor Freight's proposed categories of protectable information constitute these same improperly broad categories of non-public information like "that are technical and of a commercially sensitive nature and relate to *future products or product features* that are *in development or being considered for development*." Harbor Freight only has two multi-fuel generator models and is a new-comer to the industry without well-established research and development in multi-fuel portable generators, and instead it hired a long-time Champion engineer who worked on multi-fuel portable generators for 11 years at Champion.

If the Court declines to enter a prosecution bar (which it should), the existing AEO provisions in the protective order are sufficient, but not greater than necessary, to mitigate the harms alleged (albeit without support) by Harbor Freight. The Court has other means at its disposal to protect against the inadvertent disclosure of highly confidential information aside from a prosecution bar that all but ensures a considerable disadvantage for Champion. Harbor Freight proposes a wrecking ball (the patent prosecution bar) where a more precise tool (*e.g.,* the agreed-upon AEO language) is more than sufficient.

Further, the relevant technology is readily reverse engineered. There is no embedded software or complex micro-circuitry involved in this technology. Any

potential design-around can easily be determined by Champion engineers so placing such a restriction on Champion's prosecution attorneys would be restricting Champion's use of its experienced counsel and restrict their livelihoods when the designs would be readily accessible to any engineer or even mechanic having the basic skill of generator inspection and disassembly. *See Fontem Ventures B.V. v. R.J. Reynolds Vapor Co.*, 2017 WL 2266868, at *4 (M.D.N.C. May 23, 2017) (denying a prosecution bar when movant had "not identified what elements of its commercially available products are still confidential and not subject to reverse engineering" nor "provided any evidence about what technical information is at risk for misappropriation in the pending patent applications"); *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, 2016 WL 3129215, at *2 (N.D. Cal. June 2, 2016) (noting that prosecution bar protected information "must be truly confidential and not able to be ascertained through reverse engineering or other means").

Harbor Freight's citation to *Universal Electronics Inc. v. Roku, Inc.*, No. 8:18-01580 JVS (ADSx) for its adoption of a prosecution bar covering new and existing technologies and products is unavailing. Notably the parties to that case agreed to a prosecution bar, and the dispute before the Court was the materials to be covered and the duration of the bar.

### D.    If a bar is instituted, the members of the ZPS firm should be exempt.

If the court decides a prosecution bar is warranted (it is not), the court should hold that ZPS counsel are exempt from the prosecution bar. The court undertakes this analysis on a counsel-by-counsel basis. *Deutsche Bank*, 605 F.3d at 1381.

Mr. Ziolkowski's role with respect to prosecution of Champion's patent applications is that of "high-altitude oversight of patent prosecution." *See id.* at 1380. Mr. Ziolkowski may receive invention disclosure materials and requests to draft patent applications from Champion, but he assigns these projects to other attorneys at ZPS. *Ziolkowski Declaration* at ¶ 10. He no longer writes new applications or continuations-in-part of applications, substantively prosecute Champion's patent

applications before the USPTO, or amend the scope of the claims. *Id.* at ¶¶ 10-11. Mr. Ziolkowski's involvement in prosecution of Champion's patent applications relates only to more administrative activities like paying filing and issue fees. *Id.* at ¶ 12. Further, Mr. Ziolkowski does not advise Champion on business-related decisions, such as pricing, marketing decision, marketing channels, etc. *Ziolkowski Declaration* at ¶ 9; *Trine Declaration* at ¶ 9. There is little risk Mr. Ziolkowski "will inadvertently rely on or be influenced by information [he] may learn as trial counsel during the course of litigation." *Deutsche Bank*, 605 F.3d at 1380.

The court should also find Mr. Fritz exempt from any prosecution bar. Initially, like Mr. Ziolkowski, Mr. Fritz does not advise Champion on business-related decisions, such as pricing, marketing decision, marketing channels, etc. *Trine Declaration* at ¶ 9. Further, while Mr. Fritz has a more substantive patent prosecution role than Mr. Ziolkowski, "the potential injury to [Champion] from restrictions imposed on its choice of litigation and prosecution counsel outweighs the potential injury to [Harbor Freight]." *See Deutsche Bank*, 605 F.3d at 1381. As explained above, other than Mr. Ziolkowski, Mr. Fritz is Champion's only counsel appearing in each of Champion's four patent infringement cases. *Ziolkowski Declaration* at ¶ 14. As lead counsel managing the four cases, Mr. Ziolkowski relies on Mr. Fritz for reviewing all documents, discovery, briefs, and other related litigation documents across the four cases. *Id.* at ¶ 15. If Mr. Fritz becomes subject to a patent prosecution bar, he would not be able prosecute patent applications for Champion and continue to review all litigation documents. In addition, ZPS inspected the competitors' products, assessed those products, prepared claim charts and contentions, and drafted the complaints. However, should Harbor Freight reveal any new multi-fuel portable generators or modifications to the Infringing Products and designate related documents under the prosecution bar, Mr. Fritz would be unable to assist with that review. Hence, the above-referenced bridge between Champion's long-time counsel

1  and various law firms appearing in the four cases would be fractured, causing
2  irreparable harm to Champion.

3      In view of the above, the harm to Champion in burdening Mr. Ziolkowski and
4  Mr. Fritz with a prosecution bar outweighs any risk of inadvertent disclosure to
5  Harbor Freight. Should the court find a need for a patent prosecution bar in this case,
6  the court should find Mr. Ziolkowski and Mr. Fritz exempt from such a bar.

7  **IV.   PRECEDENT DOES NOT SUPPORT A BAR ON THESE FACTS**

8      The cases cited by Harbor Freight are distinguishable. In many, the court
9  imposed a bar only after finding a concrete risk that counsel would be involved in
10 drafting claims targeting newly disclosed inventions or technology under
11 development. *See, e.g., Front Row Techs., LLC v. NBA Media Ventures, LLC*, 125 F.
12 Supp. 3d 1260, 1275 (D.N.M. 2015). Here, Harbor Freight has not identified any such
13 risk.

14     Moreover, in *Champion Power Equip. Inc. v. Firman Power Equip. Inc.*, No.
15 CV-23-02371-PHX-DWL, 2024 WL 4524187 (D. Ariz. Oct. 18, 2024), the court
16 declined to impose a prosecution bar where, as here, the information at issue did not
17 relate to new inventions or technology under development. The court expressly
18 distinguished cases where prosecution bars were appropriate, finding that the risk to
19 the disclosing party must be concrete and specific, not theoretical.

20 **V.    CONCLUSION**

21     For the foregoing reasons, Champion respectfully requests that the Court reject
22 Harbor Freight's request for a prosecution bar. The existing protective order, with its
23 robust confidentiality protections, is sufficient to safeguard Harbor Freight's interests
24 without unduly prejudicing Champion. In the alternative, if the Court is inclined to
25 impose any prosecution bar, it should be narrowly tailored to apply only to specific,
26 truly sensitive information, and ***only*** upon a particularized showing of need.

27

28

# **ATTESTATION**

Pursuant to Local Rule 5-4.3.4(a)(2)(i), the filing party hereby attests that all signatories listed, and on whose behalf the filing is submitted, concur in this filing's content and have authorized this filing.

1 | DATED:  July 11, 2025

2 | Respectfully submitted,                        Respectfully submitted,

3 | */s/ Jennifer Hoekel*                          */s/ David M. Grable*

4 | HUSCH BLACKWELL LLP                             QUINN EMANUEL URQUHART &
    Karen Luong (SBN 246809)                        SULLIVAN, LLP
5 | karen.luong@husckblackwell.com                  David M. Grable (SBN 237765)
    355 S. Grand Avenue, Suite 2850                  davegrable@quinnemanuel.com
6 | Los Angeles, CA 90071                            Lauren Lindsay (SBN 280516)
7 | Telephone: (213) 337-6559                        laurenlindsay@quinnemanuel.com
    Facsimile: (213) 337-6551                        865 South Figueroa Street, 10th Floor
8 |                                                  Los Angeles, CA 90017-2543
9 | HUSCH BLACKWELL LLP                              Telephone: (213) 443-3000
    Thomas Heneghan (*pro hac vice*)                 Facsimile: (213) 443-3100
10 | tom.heneghan@husckblackwell.com
11 | 33 East Main Street, Suite 300                  QUINN EMANUEL URQUHART &
     Madison, WI 53703                               SULLIVAN, LLP
12 | Telephone: (608) 234-6032                       Eric Huang (*pro hac vice*)
13 | Facsimile: (608) 257-7138                       erichuang@quinnemanuel.com
                                                     295 5th Avenue
14 | HUSCH BLACKWELL LLP                             New York, NY 10016-7103
15 | Jennifer E. Hoekel (*pro hac vice*)             Telephone: (212) 849-7000
     jennifer.hoekel@husckblackwell.com              Facsimile: (212) 849-7100
16 | 8001 Forsyth Blvd, Suite 1500
17 | St. Louis, MO 63105                             *Attorneys for Plaintiff Harbor Freight*
     Telephone: (314) 345-6123                       *Tools USA, Inc.*
18 | Facsimile: (314) 480-1505

19 |
20 | ZIOLKOWSKI PATENT
     SOLUTIONS GROUP, SC
21 | Timothy J. Ziolkowski (*pro hac vice*)
22 | tjz@zpatents.com
     Jacob M. Fritz (*pro hac vice*)
23 | jmf@zpatents.com
24 | 136 S Wisconsin Street
     Port Washington, WI 53074
25 | Telephone: (262) 268-8185
26 | Facsimile: (262) 268-8185

27 | *Attorneys for Defendant Champion*
     *Power Equipment, Inc.*
28 |